**Radlee F. PAYNE, Plaintiff,**

v.

**NORWEST CORPORATION, a Delaware corporation, Norwest Bank Billings, N.A., a Montana corporation, and Norwest Bank Great Falls, N.A., a Montana corporation, Defendants.**

**No. CV 95–035–BLG–RWA.**

United States District Court,
D. Montana,
Billings Division.

Nov. 29, 1995.

David A. Veeder, Veeder Law Firm, Billings, MT, for Plaintiff Payne.

Robin M. Maher, Norwest Corporation, Counsel Law Division, Minneapolis, MN, W. Scott Mitchell, Holland & Hart, Billings, MT, Lorenz F. Fett, Jr., Linda L. Holstein, Schatz, Paquin, Lockridge Grindal & Holstein, Minneapolis, MN, for Norwest.

**MEMORANDUM AND ORDER**

ANDERSON, United States Magistrate Judge.

Pending before the Court are 1) Plaintiff's Motion for Summary Judgment on the counterclaims brought by Defendant Norwest Bank Billings, N.A. (Norwest Bank Billings) and Defendant Norwest Bank Great Falls, N.A. (Norwest Bank Great Falls) and 2)

Defendants' Motion for Summary Judgment, brought by Norwest Corporation (Norwest Corp.), Norwest Bank Billings, and Norwest Bank Great Falls on all the claims asserted by Plaintiff. After reviewing the briefs and supporting documents, and hearing oral argument on the motions on September 18, 1995, the Court rules as follows.[1]

**BACKGROUND**

This is a wrongful discharge and discrimination action that arises out of Plaintiff Radlee F. Payne's termination from employment. Payne is a white male who was 44 years old at the time of his termination. He was hired in 1985 and worked as a collection manager at Norwest Bank Billings until his termination on February 9, 1994.

Payne originally filed a complaint in Montana State District Court on April 12, 1994, asserting various claims under Montana law. Payne subsequently filed a complaint in the United States District Court for the District of Montana on February 28, 1995, asserting federal claims for discrimination and retaliation, as well as several pendant state claims. See Plaintiff's federal Amended Complaint. Defendants Norwest Bank Billings and Norwest Bank Great Falls filed counterclaims in the state and federal actions alleging that Payne's actions in taping telephone conversations of bank customers and employees violated Montana and federal wiretapping laws. The state court action was consolidated with this federal action by order of the Court on May 30, 1995. Defendants have moved for summary judgment on all counts alleged by Plaintiff and Plaintiff has moved for summary judgment on the counterclaims.

**DISCUSSION**

The present case is before this Court by way of federal question jurisdiction. 28 U.S.C. § 1331. Additionally, this Court may exercise pendent jurisdiction over related state law claims. *Brady v. Brown*, 51 F.3d 810, 816 (9th Cir.1995) (citations omitted).

---

1. Pursuant to Local Rule 105–2(d) and 28 U.S.C. § 636(c), the parties have consented to the jurisdiction of the United States Magistrate Judge for all proceedings, including trial and entry of judgment.

Rule 56(c), Fed.R.Civ.P., provides that summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

■ The burden of proof initially falls upon the moving party to identify those portions of the documents on file which it believes establish the absence of material facts. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir. 1987). If the moving party makes this requisite showing, the burden then shifts to the party opposing summary judgment to "set forth specific facts showing that there is a genuine issue for trial." Rule 56(e), Fed. R.Civ.P.; *see also Canada v. Blain's Helicopters, Inc.,* 831 F.2d 920, 923 (9th Cir. 1987).

■ All reasonable doubt as to the existence of genuine issues of material fact must be resolved against the moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Nevertheless, "[d]isputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Service,* 809 F.2d at 630 (citing *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510). "A 'material' fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. The materiality of a fact is thus determined by the substantive law governing the claim or defense." *Id.*

■ If a rational trier of fact might resolve disputes raised during summary judgment proceedings in favor of the nonmoving party, summary judgment must be denied. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Thus, the Court's ultimate inquiry is to determine whether the "specific facts" set forth by the nonmoving party, coupled with the undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence. *T.W. Elec. Serv.,* 809 F.2d at 631.

## I. Plaintiff's Motion for Summary Judgment

The parties agree that Payne recorded some of his telephone conversations with bank customers and with Frank Shaw, the President of Norwest Bank Great Falls, without the knowledge or consent of the parties to the conversations. The parties also agree that Payne recorded voice mail messages left on his Norwest voice mail. What the parties dispute is whether the recording of these conversations was illegal under federal or state law. Defendants Norwest Bank Billings and Norwest Bank Great Falls assert in their counterclaims that Payne violated both Mont.Code Ann. § 45–8–213 and the federal act entitled "Wire Interception and Interception of Oral Communications", 18 U.S.C. § 2510 et. seq. Defendants do not seek civil damages for Plaintiff's violation of the terms of Mont.Code Ann. § 45–8–213, a criminal statute.[2] Because Defendants have not pleaded a separate tort claim under Montana law, this Court need only determine whether Defendants have a valid counterclaim against Plaintiff under the federal statute.[3]

To recover civil damages under 18 U.S.C. § 2520, the Defendants must prove that Plaintiff violated 18 U.S.C. § 2511. One of the requirements of section 2511 is that an

---

2. Mont.Code Ann. § 45–8–213 provides:
 (1) Except as provided in 69–6–104, a person commits the offense of violating privacy in communications if he knowingly or purposely:
 (c) records or causes to be recorded any conversation by use of a hidden electronic or mechanical device which reproduces a human

conversation without the knowledge of all parties to the conversation.

3. Defendants also seek injunctive relief. However, as discussed at oral argument, a motion in limine may adequately address the Defendants asserted need for an injunction, and therefore the

interception must have occurred.[4] Interception is defined in 18 U.S.C. § 2510(4) as "the aural acquisition of the contents of any wire or oral communication through the use of any electronic, mechanical, or other device."

### A. Voicemail messages

■ Initially, the Court will address the distinction between Payne's recording of messages left on his voice mail at Norwest Bank Billings versus the recording of telephone conversations with customers and Frank Shaw. Although neither the Court nor the parties has found any authority directly on point with respect to voicemail messages, the Court finds *United States v. Turk*, 526 F.2d 654 (5th Cir.1976), *cert. denied*, 429 U.S. 823, 97 S.Ct. 74, 50 L.Ed.2d 84 (1976), instructive. In *Turk*, the Fifth Circuit Court of Appeals determined that "an 'interception' requires, at the least, involvement in the initial use of the device contemporaneous with the communication to transmit or preserve the communication." 526 F.2d at 658 n. 3. Payne's use of a handheld recorder to record voice mail messages did not occur contemporaneously with the leaving of the messages. Moreover, the persons leaving a message consented to the recording of their message by the fact they left a message. Therefore, the Court concludes that an "interception" did not occur, within the meaning of the federal wiretapping statute, 18 U.S.C. § 2510 et. seq. *See also Steve Jackson Games, Inc. v. U.S. Secret Service*, 36 F.3d

457, 463–64 n. 8 (5th Cir.1994) (affirming, in dicta, the validity of *Turk's* "contemporaneous acquisition" requirement). Plaintiff's motion to dismiss the counterclaims based on his duplication of voice mail messages must therefore be granted.

### B. Recording of Telephone Conversations

■ Section 2511(2)(d) "makes an explicit exception to the general rule prohibiting the interception of telephone conversations where ... one of the parties to the conversation consents to the interception and the purpose of the interception is not to commit any criminal [or] tortious ... act." *Park v. El Paso Board of Realtors*, 764 F.2d 1053, 1066 (5th Cir.1985).[5] Because Payne was a party to the recorded conversations, no violation of the federal wiretapping act can be found unless he intercepted the conversations "for the purpose of committing any criminal or tortious act."

Defendants argue that because Payne did not have the consent of the other parties to the conversations, his recording of the conversations violated § 45–8–213, M.C.A., and he cannot avail himself of the exception contained in § 2511(2)(d). However, the Court disagrees. Section 2511 is intended to prohibit the use of an intercepted conversation "in a manner in which the offending party

---

Court will not address injunctive relief at this stage of the proceedings.

**4.** 18 U.S.C. § 2511 provides: (1) Except as otherwise specifically provided in this chapter any person who—

(a) intentionally *intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept,* any wire, oral, or electronic communication;

(b) intentionally uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device *to intercept* any oral communication when—

. . . . .

(c) intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the *interception* of a wire, oral, or electronic communication in violation of this subsection;

(d) intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the *interception* of a wire, oral, or electronic communication in violation of this subsection;

. . . . .

shall be punished in subsection (4) or shall be subject to suit as provided in subsection (5). (emphasis added)

**5.** Section 2511(2)(d) provides:

It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception *unless such communication is intercepted for the purpose of committing* any criminal or tortious act in violation of the Constitution or laws of the United States or of any State. (emphasis added).

had no right to proceed." *Meredith v. Gavin,* 446 F.2d 794, 799 (8th Cir.1971). " '[I]t is the *use* of the interception with intent to harm rather than the fact of interception that is critical to liability. . . . ' " *Boddie v. American Broadcasting Companies, Inc.,* 881 F.2d 267, 270 (6th Cir.1989) (quoting *By–Prod Corp. v. Armen–Berry Company,* 668 F.2d 956, 960 (7th Cir.1982)); *see also Park,* 764 F.2d at 1066 (where Plaintiff's purpose for taping the telephone conversations was to preserve evidence for trial, he fell within the exception of § 2511(2)(d)); *Moore v. Telfon Communications Corp.,* 589 F.2d 959, 966 (9th Cir.1978) ("Congress, we believe, intended to permit one party to record a conversation with another when the recorder is acting 'out of a legitimate desire to protect himself.' "). Thus, the focus is not upon whether the interception itself violated another law; it is upon whether the *purpose* for the interception—its intended use—was criminal or tortious. To hold otherwise would result in the imposition of liability under the federal statute for something that is not prohibited by the federal statute (i.e. recording a conversation with the consent of only one party), simply because the *same act* is prohibited by a state statute. Surely this is not the result intended by Congress.

Plaintiff, moving for summary judgment on Defendant's federal wiretapping claim, has pointed to the absence of any evidence to support a finding that Plaintiff was motivated by a criminal or tortious purpose when he recorded the telephone conversations at issue. The burden then shifts to Defendants to come forward with specific facts showing that there is a genuine issue for trial. Defendants have not met their burden in resisting Plaintiff's motion for summary judgment on this issue. Because there is no evidence that Plaintiff recorded the telephone conversations in question "for the *purpose* of com-

mitting [a] criminal or tortious act in violation of the . . . laws . . . of any State." 18 U.S.C. § 2511(2)(d) (emphasis added), the federal one party consent law must apply and Plaintiff's motion for summary judgment on Defendants' counterclaims is properly granted.

## II. Defendants' Motion for Summary Judgment

### A. Federal Discrimination Claims

Payne is a white male who was forty-four years old at the time of his termination. He allegedly suffers from a disability, and Defendants do not dispute his disabled status for purposes of this motion. Plaintiff has alleged discrimination on the basis of race, sex, age, and disability. Therefore, Plaintiff seeks to recover under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*[6] the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.,*[7] and the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq.*[8] In general, Defendants argue that summary judgment must be granted on Count I of Plaintiff's federal Amended Complaint because there is no proof that Payne was discharged because he was white, male, over forty years old, or disabled.

A plaintiff alleging discrimination under Title VII or the ADEA may proceed under either a theory of disparate treatment or disparate impact. *Foster v. Arcata Assoc., Inc.,* 772 F.2d 1453, 1458 (9th Cir.1985), *cert. denied,* 475 U.S. 1048, 106 S.Ct. 1267, 89 L.Ed.2d 576 (1986), overruled on other grounds by *Kennedy v. Allied Mutual Ins. Co.,* 952 F.2d 262 (9th Cir.1991) (citations omitted). "The disparate treatment theory is appropriately employed by aggrieved employees claiming that they were intentionally treated less favorably because of their race,

---

**6.** Section 2000e–2(a)(1) provides: that it is unlawful for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

**7.** Section 623(1) provides: it is unlawful for an employer "to fail or refuse to hire or to discharge

any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."

**8.** 42 U.S.C. § 12112(a) prohibits employment "discriminat[ion] against a qualified individual with a disability because of the disability of such individual."

color, religion, sex, or national origin under Title VII, or because of their age under the ADEA," and is the basis for Plaintiff's claims herein. *Id.* (citations omitted)

To prevail on a claim of disparate treatment, Plaintiff must ultimately prove that Defendants intended to discriminate against him. *Id.* at 1459 (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–804, 93 S.Ct. 1817, 1824–1825, 36 L.Ed.2d 668 (1973)). In *McDonnell Douglas,* the Supreme Court first introduced a framework for the allocation of burdens and the order of proof in disparate treatment cases. 411 U.S. 792, 802–804, 93 S.Ct. 1817, 1824–1825. As the case of *Wallis v. J.R. Simplot Co.,* 26 F.3d 885 (9th Cir.1994), recently stated, the three steps for analyzing a claim under Title VII and the Age Discrimination in Employment Act (ADEA) include: [9]

> [A] plaintiff must first establish a prima facie case of discrimination. If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate a legitimate nondiscriminatory reason for its employment decision. Then, in order to prevail, the plaintiff must demonstrate that the employer's alleged reason for the adverse employment decision is a pretext for another motive which is discriminatory.

*Wallis,* 26 F.3d at 889 (quoting *Lowe v. City of Monrovia,* 775 F.2d 998, 1007 (9th Cir. 1985), *as amended,* 784 F.2d 1407 (9th Cir. 1986)).

The degree of proof necessary to prove a prima facie case is minimal. *Id.* (citations omitted). The Plaintiff needs to only offer evidence which gives rise to an inference of discrimination. *Id.* (citation omitted). "The *prima facie* case may be based either on a presumption arising from the factors such as those set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 [93 S.Ct. 1817, 1824, 36 L.Ed.2d 668] (1973), or by more direct evidence of discriminatory intent." *Wallis,* 26 F.3d at 889 (citing *Lowe,* 775 F.2d at 1009).[10]

After the prima facie case is established, if the Defendant offers a legitimate, nondiscriminatory reason for the employment decision, the *McDonnell Douglas* presumption of discrimination drops out. *Id.* at 892 (citing *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)). Therefore, "the mere existence of a prima facie case, based on the minimum evidence necessary to raise a *McDonnell Douglas* presumption does not preclude summary judgment." *Wallis,* 26 F.3d at 890. Rather, the plaintiff needs to establish "a triable issue of fact on the ultimate question of whether [the employer] intentionally discriminated or retaliated against him." *Id.* at 892.

### 1. Race

■ In order to establish a *prima facie* case as to race discrimination, Payne must either satisfy the *McDonnell Douglas* factors, which includes showing that a minority replaced him, or introduce other evidence of intent to discriminate against Payne because he was white. *Wallis,* 26 F.3d at 889; *see also, St. Mary's Honor Center v. Hicks,* 509 U.S. 502, ——, 113 S.Ct. 2742, 2747 (1993). It is undisputed that Payne was not replaced by a minority after he was discharged. In fact, Payne has introduced no evidence that indicates he was discharged on account of his race. Rather, Plaintiff's claim of racial discrimination focuses on a memo written by Ken Murray on March 17, 1992, which recommends increasing the number of women

---

**9.** The same standards apply to a claim under the ADA. *Collings v. Longview Fibre Co.,* 63 F.3d 828 (9th Cir.1995).

**10.** The factors set forth in *McDonnell Douglas* and more recently applied in *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, ——, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993) include proving: 1) plaintiff was a member of a protected class; 2) that he was qualified for the job; 3) that he was discharged; and 4) that the position remained open and was ultimately filled by a person of a different class. *See also, Higgins v. City of Vallejo,* 823 F.2d 351, 355 (9th Cir.1987) (in a reverse discrimination case the same standards from *McDonnell Douglas* apply). Similarly, to prove a prima facie case of an ADEA violation, the plaintiff must establish that he was: 1) a member of a protected class [age 40–70]; 2) performing his job in a satisfactory manner; 3) discharged; and 4) replaced by a substantially younger employee with equal or inferior qualifications. *Wallis,* 26 F.3d at 891 (citation omitted).

and minorities in certain positions (Defs' App. 375–377), and the fact Norwest had diversity goals and kept statistics on the number of minorities employed at managerial levels. Pl's Memo. in Opp. to Defs Mot. for Summ. J., p. 23–26. However, evidence of these recommendations or goals does not even give rise to an inference that Payne himself was fired on account of his race. *Wallis*, 26 F.3d at 889. Because Payne cannot produce any evidence indicating that he was discharged on account of his race, this claim must be dismissed for failure to establish a *prima facie* case.

### 2. Disability

With respect to proving the four factors necessary to establish a *prima facie* case of disability discrimination, the parties do not dispute (for purposes of this motion) that factors one and two have been met, i.e. that Payne was disabled and discharged. Although there is some dispute about whether Payne was performing his job satisfactorily, any questions of fact must be resolved against the moving party and therefore the Court will assume for purposes of this motion that Plaintiff has met the third prong of a *prima facie* case.

■ However, the Court concludes that Payne is unable to establish the fourth factor of the *prima facie* case. In a disability discrimination case, the fourth *McDonnell Douglas* factor has been modified so that a Plaintiff need not prove that he was replaced by a person outside the protected class. Instead a Plaintiff must prove that his "discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination." *Ennis v. National Association of Business and Educational Radio Incorp.*, 53 F.3d 55, 58 (4th Cir.1995) (citing *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981)). Therefore, the plaintiff

must "present some other evidence that disability was a determining factor in the employer's decision." *Ennis*, 53 F.3d at 59.

■ Payne has not introduced even weak evidence that disability was a factor in the decision to terminate him. The only evidence he offers to support his claim of discrimination based on disability is that in February of 1993, Payne described himself as disabled on a form provided to him (entitled "Self–Identification of Disability Status") and was subsequently discharged in February of 1994. Without any authority or explanation, Payne evidently considers that this time frame of one year is sufficient to create an inference that he was fired based on his disability. However, Payne concedes that Norwest was aware of his disabled status in October of 1985, when he was initially hired by Norwest Bank Billings. The significance of the one year time frame, if there is any, is therefore eroded. Pl's Mem. of Law in Opp. to Defs' Mot. for Summ. J., p. 29 n. 18.

Furthermore, Payne's own deposition testimony shows he has no evidence of discrimination based on his disability. Payne Depo., p. 61–62.[11] Payne attempts to avoid the import of his prior testimony by arguing that the deposition was taken over a year ago, and that since that time more evidence of Defendants' discriminatory practices has been revealed. Pl's Mem. of Law in Opp. to Defs' Mot. for Summ. J., p. 29 n. 19. Despite this argument, Plaintiff still has not produced any evidence to support a reasonable inference that he was discharged because he was disabled. His speculation that he might have been fired because of a disability does not rise to the level of proof necessary to establish an inference of discrimination. Defendants are entitled to summary judgment on this issue because Payne has failed to satisfy the requirements of a *prima facie* case of disability discrimination.[12]

---

**11.** Q (Holstein): Do you have any evidence in your mind or any episodes or comments or behavior to offer today that would indicate that you were fired because you were disabled?

A (Payne): I don't know what was in Norwest's mind.

Q: So you don't have anything today? You are not of the—

A: Maybe Norwest wanted to get rid of me because I was a disabled person.

**12.** Payne has presented less evidence of discrimination than that presented by the unsuccessful Plaintiff in *Nesbit v. Pepsico, Inc.*, 994 F.2d 703 (9th Cir.1993). In *Nesbit* (an ADEA case), the Plaintiff relied on the following evidence for a claim of age discrimination: "(1) statistical evi-

### 3. Age

With respect to Plaintiff's claim of age discrimination, three of the four elements of a *prima facie* case are undisputed. Payne was over forty at the time he was discharged. The four people that now perform his job duties were all under forty when they took over. Pl's App., 32. Furthermore, Payne has presented evidence that he was performing his job satisfactorily at the time of his discharge. For example, Payne's supervisors John Koppelman and Les Jimmerson both testified that Payne had received good and superior ratings on his performance reviews. (Pl's App., 174; 101–102) Although Payne has not submitted the actual performance reviews, the Court concludes that Plaintiff has established a prima facie case of age discrimination.[13] Therefore, the burden shifts to Defendant to produce evidence the discharge was for a legitimate, nondiscriminatory reason.[14]

Defendants contend that the decision to terminate Payne was based on his insubordinate behavior. In general, Defendants state that Payne's behavior was "adverse to his employer's interest, disruptive in the workplace and contrary to his supervisors' instructions." Defs' Reply Br., p. 6. To support this contention of a nondiscriminatory reason for his discharge, the Defendants point to evidence showing that Payne's behavior had created ongoing problems for his supervisors. Defs' App. 76–85; 172–210. Additionally, Plaintiff's superior Joy Ott issued a memorandum to Jimmerson suggesting ways to encourage Payne to change his perceived inappropriate behavior. App. 144–145. Defendants also introduce a memorandum from Koppelman to Payne indicating that Payne had acted inappropriately and used profanity at a meeting, and that disciplinary action would be necessary if this type of behavior reoccurred. Defs App., 232. Finally, Defendants point to the taping of Arneson's voice mail message and the use of the tape against John Koppelman as the "last straw." Koppelman testified that he felt threatened by Payne and his use of the tape when he gave Payne his performance evaluation and fired him for insubordination. Defs App. 150. The deposition testimony of Koppelman alone is clearly admissible evidence of a legitimate, nondiscriminatory reason for Payne's discharge and meets the employer's burden under the *McDonnell Douglas* analysis.

Since Defendants carried their burden, the burden returns to Plaintiff to "prove by a preponderance of evidence that the proffered reason is merely a pretext for discrimination." *McDonnell Douglas,* 411 U.S. at 804–805, 93 S.Ct. at 1825–1826. Plaintiff argues that there is evidence that Defendants' reason is pretextual because the reasons given by Defendants now are not the same as the reasons conveyed to Payne on February 9, 1994, the day of his termination. Koppelman's notes of the termination meeting state:

> Today at 11:15 I met with Rad. I explained that his employment with Norwest was terminated for cause. That he had obtained confidential information via voice mail and used it inappropriately. I told

dence that some older workers were terminated while some younger workers were retained and that employees hired after the RIF were generally younger than those terminated; (2) a comment by [the employee's] direct superior to [the employee] that '[w]e don't necessarily like grey hair'; (3) an interview of [the employer's] Senior Vice President of Personnel in which he stated, 'We don't want unpromotable fifty-year olds around.'" *Id.* at 705. The Ninth Circuit, "viewing the evidence cumulatively, and in a light most favorable to the appellants" determined that it fell short of creating an inference of discrimination and granted the employer summary judgment. *Id.*

**13.** Plaintiff consistently relies on conclusions made in Plaintiff's affidavit to dispute Defendants' statements of the facts, rather than introducing direct evidence. For example, with respect to performance reviews, the Plaintiff states that "Nearly all of Payne's performance reviews revealed overall ratings of "Superior" for almost his entire seven-year tenure at Norwest" with the only citation being to Plaintiff's Statement of Facts, which then refers to Payne's affidavit, which restates the same conclusion. (Pl's Br. in Opp., p. 28; Pl's Statement of Facts, p. 5; Payne's Aff., Pl's App. p. 17).

**14.** The burden upon Defendant at this point is one of production of evidence, not persuasion. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 257, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207; *Wallis,* 26 F.3d 885, 892. The burden of persuasion remains with the Plaintiff at all times.

him this violated attorney-client privilege and Norwest's need to know policy.... Pl's App. 486. Payne asserts that because these notes do not state "insubordination" as the reason for termination, Defendants simply concocted this reason for purposes of this lawsuit.

However, to withstand Defendants' motion for summary judgment on this issue, Plaintiff must now come forward with specific facts to demonstrate that Defendants' reasons were a pretext for discrimination. ".The presumptions having dropped out of the picture, we are left with the ultimate question of whether [Payne] has offered evidence sufficient to permit a rational trier of fact to find that [Defendants] *discriminated against him because of his age....*" *Wallis*, 26 F.3d at 892 (emphasis added); *St. Mary's v. Hicks*, 509 U.S. at ——, 113 S.Ct. at 2753. Although "insubordination" was not specifically stated by Koppelman on the day of his termination, the conduct stated falls within the parameters of "insubordinate" conduct. In any event, the Defendants' reasons for termination are not "fundamentally different justifications" under *Washington v. Garrett*, 10 F.3d 1421, 1434 (9th Cir.1994), which would give rise to a genuine issue of fact as to pretext. Rather Defendants' reasons for terminating Payne consistently allege that Payne's attitudes and behaviors towards his employer and other employees were insolent and disrespectful.

Payne established his *prima facie* case of age discrimination by relying on the presumption of discrimination created under the *McDonnell Douglas* analysis. He has come forward with no additional direct or circumstantial evidence to support his suspicions that he was a victim of age discrimination. *Wallis*, 26 F.3d at 892. His "mere assertions of discriminatory motive and intent are inadequate to withstand summary judgment." *Foster v. Arcata*, 772 F.2d 1453, 1459 (9th Cir.1985), *cert. denied*, 475 U.S. 1048, 106 S.Ct. 1267, 89 L.Ed.2d 576 (1986), overruled on other grounds by *Kennedy v. Allied Mutual Ins. Co.*, 952 F.2d 262 (9th Cir.1991).

Payne has failed to show that a genuine issue of material fact exists as to whether Defendants' reasons for terminating Payne were a pretext for age discrimination and therefore Defendants' motion for summary judgment is properly granted on this issue. *Wallis*, 26 F.3d at 892 (Plaintiff "failed to carry his burden of establishing a triable issue of fact on the ultimate question of whether [Defendant] intentionally discriminated ... against him.")

**4. Sex**

 With respect to sex discrimination, Payne has not established a *prima facie* case. Payne was not replaced by a person of the opposite sex, and no inference of sex discrimination can be drawn from the fact two women and two men now perform Payne's work responsibilities. However, even assuming a *prima facie* case has been met, Defendants have provided a legitimate, nondiscriminatory reason for Payne's termination. Therefore, the burden shifts to Plaintiff to set forth specific facts from which a trier of fact could conclude that the Defendants' proffered reason was pretext, and that Payne was subjected to intentional discrimination on the basis of his sex.[15]

As with the age discrimination claim, Plaintiff's case rests primarily upon his *belief* that because Defendants wanted to have more women and minorities in upper level management positions, his discharge necessarily means that illegal discrimination occurred. However, it is not Defendants' policies that are on trial; rather, the ultimate issue is whether Payne was a victim of intentional discrimination on the basis of sex. *St. Mary's v. Hicks*, 509 U.S. at ——, 113 S.Ct. at 2753; *Wallis*, 26 F.3d at 892.

Again, Payne has failed to submit any specific facts from which a jury might conclude that the reason given by Defendants for his discharge was pretextual. The only thing even remotely resembling "statistical" evidence of discriminatory practices was Plaintiff's allegation in his federal complaint that six other men were "replaced" by women.

---

**15.** Although Payne has argued the sex and race discrimination claims together as a claim of reverse discrimination against a "white male," the result is the same whether analyzed separately or together.

Federal Amended Complaint ¶ 63. Defendants have shown that even in this miniscule sampling of Norwest employees, four of the six men were in fact promoted and that their replacement by women in these positions was a natural and orderly progression of current employees up through the ranks, giving rise to no inference of discrimination. Defs' App. 65–75. A similar attempt at proving discrimination was struck down in *Mundy v. Household Finance Corp.*, in which the Ninth Circuit stated:

> [i]n a large corporation with branch offices throughout the country, the discharge of seven older employees over a two and a half year period alone does not establish a pattern or practice of discrimination. [Plaintiff] offers no evidence that these terminations were without good cause, or that age was a determining factor in any of them. The fact that other older employees of [Defendant] were discharged is simply not probative of [Defendant's] motives for terminating Plaintiff.

*Mundy,* 885 F.2d 542, 546 (9th Cir.1989). Furthermore, at this stage in the proceedings, Payne cannot rely on the pleadings but instead must offer additional evidence of discrimination. A case cannot proceed to trial based only on the speculation and suspicions of one party when there are no material questions of fact at issue. Therefore, Defendant is entitled to summary judgment on this claim as well.

### 5. Retaliation

To establish a *prima facie* case of retaliatory discharge, the Plaintiff needs to show that: "1) he was engaged in a protected activity; 2) he was thereafter subjected by his employer to an adverse employment action; and 3) a causal link exists between the protected activity and the adverse employment action." *Wallis,* 26 F.3d at 891 (citing *Yartzoff v. Thomas,* 809 F.2d 1371, 1375 (9th Cir.1987), *cert. denied,* 498 U.S. 939, 111 S.Ct. 345, 112 L.Ed.2d 309 (1990). Again, after the *prima facie* case is met, Defendants must come forward with a legitimate reason for Payne's termination and Payne must then rebut this reason as pretextual. *Wallis,* 26 F.3d at 892.

Payne has established a *prima facie* case of retaliation because of the proximity of time between his MHRC filings on January 31, 1994, and his discharge on February 9, 1994. *See Miller v. Fairchild Industries, Inc.,* 885 F.2d 498, 505 n. 8 (9th Cir.1989), *cert. denied,* 494 U.S. 1056, 110 S.Ct. 1524, 108 L.Ed.2d 764 (1990). However, as discussed above, Defendants have given legitimate reasons for Payne's discharge, based upon insubordination. The burden shifts to Payne, to "produce 'specific, substantial evidence of pretext.'" *Wallis,* 26 F.3d at 890 (quoting *Steckl v. Motorola, Inc.,* 703 F.2d 392, 393 (9th Cir.1983)). Thus, Payne may no longer simply rely upon the same evidence used to meet his prima facie case; he must "'tender a genuine issue of material fact as to pretext in order to avoid summary judgment.'" *Id.*

After reviewing the material submitted, the Court finds that Payne has not produced any evidence to permit a rational trier of fact to determine that the reasons proffered by Defendants are a pretext for retaliation. Payne again relies on the fact that his supervisor did not articulate on the day of his termination that "insubordination" was the reason for his termination, as evidence of pretext. However, as noted above, the conduct cited at the time of termination is not inconsistent with the general description of "insubordinate" behavior. No inference of pretext can reasonably be drawn from this purely semantic difference.

Plaintiff has also failed to come forward with any additional evidence, beyond that used to establish his *prima facie* case, to show that retaliation was the motivation for his firing. Plaintiff's *prima facie* case was based solely upon the presumption of retaliation drawn from the timing of his termination, in relation to the filing of his discrimination complaint. However, at this stage in the proceeding, Plaintiff is no longer entitled to rely solely upon that presumption of discrimination; he must set forth evidence from which a rational trier of fact could find that Defendants retaliated against him for filing his MHRC claim. *Id.* at 892. The timing of his termination, standing alone, is not sufficient to meet that burden, particularly when

viewed in the context of other surrounding events.

On January 20, 1994, Payne's supervisor, John Koppelman, conducted a performance review. At that point in time, the record shows that there were, and had been, problems with Payne's behavior and attitude, from the employer's perspective.[16] On the date of the performance review, Koppelman did not know that Plaintiff had mistakenly heard, and intentionally recorded, Arneson's voicemail message. This was also prior to January 24, 1994, the date on which Payne advised Koppelman of his intent to file a discrimination complaint with the MHRC.

Payne actually filed his discrimination claim on January 31, 1994. On that same day, he discussed his performance review with Koppelman, and accused Koppelman of allowing someone else to have improper input into the review. However, Payne refused to produce any proof of this without having his attorney present. Payne ultimately revealed the existence of the recorded voicemail message, on February 8, 1994. His revelation of the voicemail message was in the context of his attempt to "prove" to Koppelman that Koppelman had engaged the assistance of Arneson in drafting the performance evaluation, which in Payne's view violated Norwest policy. Koppelman has testified that he believed Payne's use of the recorded voicemail message in an attempt to obtain a change in his performance review was improper, and that he felt "threatened" by it. Koppelman depo., Vol. I, pgs. 38–39, 48. The following day, February 9, 1994, Payne was terminated. While Payne may not agree with Koppelman's interpretation of his actions with respect to the use of the taped voicemail message, the ongoing and increasingly contentious nature of the relationship simply cannot be disputed.[17]

Given Payne's history of attitudinal and behavioral problems (including incidents of outright disagreement and lack of cooperation with his superiors), and the intervening occurrence of a significant event (like the revelation of a secretly recorded voicemail message used as leverage in a conversation with one's superior), any inference of causation that might otherwise be drawn from the simple timing of the termination is seriously weakened. Payne has failed to set forth any evidence from which a jury could conclude that his employer's decision to terminate him was caused by his filing of an EEOC complaint, rather than the long history of problems associated with his employment. Federal law does not prohibit all retaliation, only that associated with protected activities. Thus, the timing of the termination, standing alone, is not sufficient to meet Plaintiff's burden under the third prong of the *McDonnell Douglas* analysis.

In short, Payne's *prima facie* case was met by the presumption of discrimination arising from application of the *McDonnell Douglas* factors. If Defendants had failed to rebut this presumption by offering a legitimate, nonretaliatory reason for the discharge, then Payne would prevail, without further inquiry. *Hicks*, 509 U.S. at ——, 113 S.Ct. at 2748. However, these defendants did come forward with such a reason, and Payne could no longer rely on the presumption of discrimination to establish his case. Instead, it was incumbent upon him to present evidence from which a reasonable trier of fact could conclude that the reason proffered by Defendants was pretextual. Payne failed to do so, and has failed to otherwise show that the Defendants' were motivated by retaliation. The evidence of timing, standing alone, is insufficient to create a genuine issue of material fact on the issue of retaliation, to avoid summary judgment. Were the Court to rule otherwise under these facts, it would in effect be holding that any employee discharged following the filing of a human rights complaint is immune from summary judgment, regard-

---

16. For example, the record shows that in September, 1993, Plaintiff engaged in conduct that his supervisor, John Koppelman, described as "inappropriate and insubordinate." See Second Koppelman aff., App. 101 (Memo from Koppelman to Plaintiff dated September 14, 1993). Koppelman specifically warned Plaintiff that "if this happens again, we will take disciplinary action which may include termination of your employment."

17. Because discrimination is an intentional act, it is the employer's state of mind, not Payne's, that is significant.

less of the reasons for the discharge or the existence (or nonexistence) of proof of retaliation.

Because Payne has failed to set forth facts from which a jury might reasonably find either that the stated reasons for his termination were pretext, or that the termination was motivated by retaliation, Defendants are entitled to summary judgment on Payne's retaliation claim.

### B. State Law Claims

■ The Court has determined that summary judgment is appropriately granted on all federal claims asserted by both the Plaintiff and the Defendants. Although the Court has discretion to retain jurisdiction over the remaining state law claims, *Baddie v. Berkeley Farms, Inc.*, 64 F.3d 487 (9th Cir.1995), the practice in the Ninth Circuit is to dismiss the state law claims if all the federal claims are dismissed prior to trial. *See Danner v. Himmelfarb*, 858 F.2d 515, 523 (9th Cir. 1988); *Carnegie–Mellon v. Cohill*, 484 U.S. 343, 350, 108 S.Ct. 614, 619, 98 L.Ed.2d 720 (1988) (when federal claims are resolved prior to trial, the Court has a "powerful reason" to decline to exercise jurisdiction over the plaintiff's pendent state claims); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). A determination of whether to exercise pendent jurisdiction involves considerations of comity, judicial economy, convenience and fairness to the litigants. *Carnegie–Mellon*, 484 U.S. at 350 n. 7, 108 S.Ct. at 619 n. 7.

■ During the nearly six months since the state and federal claims were consolidated in federal court on May 30, 1995, all the claims (including the state law claims) have been the subject of extensive discovery and trial preparation, as evidenced by the present motions for summary judgment. If this Court declines to exercise pendant jurisdiction over the state claims, those efforts will not be wasted. Nothing prevents the parties from essentially resubmitting the same briefs, reasserting the same factual and legal

arguments, in the state forum. Although there may be some delay involved in recalendaring the matter in state court, any inconvenience is offset by considerations of comity, which dictate that these purely state law matters are more properly resolved in state court. The state court managed the case for over a year prior to the time the state and federal actions were consolidated, and is already familiar with much of the underlying factual and legal basis for Plaintiff's claims. Thus, the Court finds that the state court is the proper forum for resolution of the factual and legal issues raised by the state law claims at issue, and that it should decline to exercise jurisdiction over the pendent claims.[18]

### CONCLUSION

The above rulings have not been easily reached by the Court. Although summary judgment is an effective tool for weeding out factually insufficient claims or defenses, it is not lightly granted. However, after carefully and methodically evaluating the factual material presented by both sides in light of the burden-shifting analysis established by *McDonnell Douglas* and its progeny, the court concludes that there really is no evidence to show, or from which a jury could reasonably infer, that discrimination or retaliation were the motivating forces behind Plaintiff's discharge. No matter how sincere Plaintiff is in his belief that Defendants conspired to terminate him in a discriminatory or retaliatory manner, his subjective beliefs are not sufficient to withstand Defendants' motion for summary judgment. Thus, after much thought, the undersigned finds that this case is an appropriate one for the entry of summary judgment, as set forth above.

IT IS ORDERED that Plaintiff's motion for summary judgment on Defendants' counterclaims is granted.

IT IS ORDERED that Defendants' motion for summary judgment is granted with re-

---

18. Although the Court originally believed that all claims (state and federal) were appropriately resolved in one consolidated proceeding, that has not proven to be the case. At the time Judge Battin consolidated the state and federal proceedings, he had no way of knowing that the federal claims would ultimately be dismissed prior to trial. The Court regrets any delay caused in the underlying state proceedings as a result of the above rulings.

spect to Plaintiff's federal claims of discrimination and retaliation.

IT IS FURTHER ORDERED that the Court declines to exercise pendent jurisdiction over the remaining state law claims. Those claims, as presently consolidated, are remanded to the Montana State District Court for further proceedings.

The Clerk is directed forthwith to notify counsel of record of the making of this Order.

Done.