**Richard L. BLANKE, Plaintiff,**

v.

**ROCHESTER TELEPHONE CORP., Defendant.**

**No. 96–CV–6200L.**

United States District Court, W.D. New York.

Feb. 5, 1999.

590

Theodore S. Kantor, Bilgore, Reich, Levine, Kroll & Kantor, Rochester, NY, for Richard L. Blanke, plaintiff.

Todd R. Shinaman, J. Nelson Thomas, Nixon, Hargrave, Devans & Doyle, LLP, Rochester, NY, for Rochester Telephone Corp., defendant.

### DECISION AND ORDER

LARIMER, Chief Judge.

Plaintiff, Richard L. Blanke, commenced this action in New York State Supreme Court, Monroe County, on March 26, 1996, alleging causes of action under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Civil Rights Act of 1991, Pub.L. No. 102–166, 105 Stat. 1071 (1991). Defendant, Rochester Telephone Corporation ("RTC"), removed the action to this court pursuant to 28 U.S.C. §§ 1331 and 1441(b) on April 25, 1996. Plaintiff, a former employee of RTC, alleges that he was terminated on account of his age, race and sex. Defendant has moved for summary judgment.

### FACTUAL BACKGROUND

Plaintiff began working for RTC in October 1988 as a purchasing agent. In February 1992, he voluntarily transferred from RTC's Purchasing Department into its Internal Audit Department, where he worked as an auditor. Plaintiff was terminated from

his employment on April 15, 1993. Plaintiff, who is white, was forty-one years old at the time.

RTC contends that plaintiff's termination occurred as part of a downsizing within its Corporate Department. RTC claims that it had determined that, to decrease its personnel in the Internal Audit Department, one internal auditor should be terminated. RTC alleges that Frank Karbel, the Internal Audit Director, reviewed the 1992 performance appraisals of the six auditors in the Internal Audit Department, and also independently evaluated their performances during the period after the appraisals were written, and determined that plaintiff was ranked lowest of the six auditors. According to RTC, that is why plaintiff was chosen for termination.

Plaintiff alleges that RTC's "downsizing" was, at least as far as his own termination is concerned, a pretext to eliminate a white male employee so that RTC could promote "diversity" within its ranks by hiring minority employees. Plaintiff claims that in September 1993, some five months after he was terminated, RTC hired two minority employees to replace him: Bruce Tolbert, a forty-two-year-old black male, and Jose Diaz, a forty-six-year-old Hispanic male. RTC admits that it hired Tolbert and Diaz, but contends that they were hired to replace two other auditors who voluntarily resigned after plaintiff was terminated.

■ On January 19, 1994, plaintiff filed a complaint against defendant with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff checked the boxes for race and age discrimination, and stated, *inter alia*, "I believe that I was discharged because of my race, white," and, "I further believe that I was discriminated against in my layoff/discharge because of my age...." He did not check the box for sex discrimination, nor did he expressly state that he believed that he had been discriminated against on account of his sex, though he did state that he had "observed that different qualifications were used to promote white men vs.

other personnel." Affidavit of Todd R. Shinaman, sworn to Mar. 2, 1998, Ex. B. On June 13, 1994, plaintiff filed an amended EEOC complaint stating that he had previously "filed a charge of age and race discrimination," and that he believed that defendant had refused to consider him to fill certain vacancies that had arisen since his termination, in retaliation for plaintiff's filing of his prior EEOC complaint. *Id.* On March 29, 1996, the EEOC issued a right-to-sue notice, which contained no factual findings. Plaintiff commenced this action on March 26, 1996.[1]

## DISCUSSION

### I. Age Discrimination Claim

■ To make out a *prima facie* case of age discrimination, plaintiff must demonstrate that (1) he belongs to the protected age group, (2) he was qualified to perform the duties required by the position, (3) he was discharged, (4) and he was discharged under circumstances suggesting that age was a factor. *Woroski v. Nashua Corp.*, 31 F.3d 105, 108 (2d Cir.1994); *Gallo v. Prudential Residential Servs., Ltd. Partnership*, 22 F.3d 1219, 1225 (2d Cir.1994); *Spence v. Maryland Casualty Co.*, 995 F.2d 1147, 1155 (2d Cir.1993); *Levin v. Analysis & Tech.*, 960 F.2d 314, 316 (2d Cir.1992); *Montana v. First Fed. Sav. & Loan of Rochester*, 869 F.2d 100, 104 (2d Cir.1989). The Second Circuit has stated that a plaintiff's burden to establish a *prima facie* case is *de minimis*. *Meiri v. Dacon*, 759 F.2d 989, 996 n. 10 (2d Cir.), *cert. denied*, 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985); *Sweeney v. Research Found. of the State Univ. of New York*, 711 F.2d 1179, 1184 (2d Cir.1983).

■ An ADEA action is governed by the same three-step burden shifting analysis used in the Title VII context. *Montana*, 869 F.2d at 103; *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1112 (2d Cir.1988).

First, the plaintiff has the burden of proving by the preponderance of the evidence a *prima facie* case of discrimination. Sec-

---

1. It is not clear why plaintiff apparently filed the complaint in this action prior to his receipt of the right-to-sue notice. Since issuance of a right-to-sue notice is not a jurisdictional requirement, however, the EEOC's subsequent issuance of the notice satisfies the statutory requirements in this case. *Gooding v. Warner–Lambert Co.*, 744 F.2d 354, 358 (3d Cir.1984).

ond, if the plaintiff succeeds in proving the *prima facie* case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Texas Dep't of Community Affairs v. Burdine,* 450 U.S. at 252–53, 101 S.Ct. 1089 (quoting *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)).

■ In the case at bar, I am not convinced that plaintiff has even carried his *de minimis* burden of establishing a *prima facie* case of age discrimination. Although plaintiff has established the first three elements of a *prima facie* case, there is virtually nothing in the record tending to establish the fourth, *i.e.,* that he was terminated under circumstances suggestive of age discrimination. At any rate, even if plaintiff has carried this burden, he has certainly not shown the existence of a genuine issue of fact concerning whether defendant's proffered reason, *i.e.,* that plaintiff's performance rating was the lowest in his group, is a pretext for age discrimination.

Plaintiff does not dispute defendant's assertion that at the time of his termination at age 41, the five other persons in his unit were ages 40, 41, 44, 45, 50, and 50. Nor does plaintiff dispute that Tolbert and Diaz, who plaintiff alleges replaced him, were respectively ages 42 and 46 at the time they were hired. Plaintiff, then, was one of the *youngest* people in his unit, and his alleged replacements were *older* than he. If anything, these facts tend positively to show a complete absence of age discrimination.

In his complaint, plaintiff alleges that while he was in the Purchasing Department, he "found that he was passed over for promotion in favor of female candidates who were often younger ..." and less qualified than he. Complaint ¶ 12. That is allegedly why he transferred out of that department. Plaintiff, however, does not assert a claim based on a failure to promote him, or on any events that occurred while he was in the Purchasing Department, and he has shown no nexus between these alleged promotions of younger females in Purchasing and his termination from the Internal Audit department. This evidence is simply irrelevant to his claims.

Plaintiff also alleges that after he transferred to the Internal Audit Department, he "was informed that he and other white male employees who were generally over the age of forty (40) years should seek transfer to employment elsewhere within the company because the company needed to hire minority and/or female employees...." Complaint ¶ 16. He does not allege, however, that he was told that the company needed to hire *younger* employees, nor does he allege that RTC did hire younger employees to work in the Internal Audit Department.

In addition, plaintiff has submitted no evidence that younger, less qualified employees were in fact chosen over him for any particular positions; he has identified neither the positions in question nor the successful candidates. *See Brown v. Coach Stores, Inc.,* 163 F.3d 706, 708 (2d Cir.998) (plaintiff asserting failure-to-promote claim must "allege that she or he applied for a specific position or positions and was rejected therefrom ...").

The only evidence relating to this matter is plaintiff's statement that one Beth DeFranco (whose age plaintiff does not appear to have alleged anywhere in the record) was selected for a certain position instead of plaintiff. Plaintiff stated, however, that he had not even been aware that the position in question was going to be open until after DeFranco was hired. He therefore did not actually apply for that position, and he testified only that he had previously "mentioned to [one of his supervisors] that I was interested in advancement." Plaintiff's Deposition (Defendant's Motion for Summary Judgment Ex. E) at 45. That is not sufficient to sustain plaintiff's claim. *See Brown,* 163 F.3d 706, 708 (plaintiff cannot "merely assert[ ] that on several occasions she or he generally requested promotion").

Moreover, apart from his broad allegation that defendant had a policy of promoting "diversity" in its workforce, plaintiff has presented no evidence that these alleged occurrences in the Purchasing Department were in any way related to defendant's decision to terminate him from the Internal Audit Department, or that any of the same people were involved. *See Price Waterhouse v. Hopkins,* 490 U.S. 228, 277, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) (statements or actions by nondecisionmakers, or actions unrelated to decisionmaking process, cannot support allegation of pretext) (O'Connor, J., concurring); *Ayala–Gerena v. Bristol Myers–Squibb Co.,* 95 F.3d 86, 97 (1st Cir. 1996). Plaintiff's claim is based on his termination, not on an alleged failure to promote, and these alleged occurrences are simply not probative of whether his termination was discriminatory.

## II. Sex Discrimination Claim

### A. Failure to Include Claim in EEOC Complaint

■ Defendant contends that plaintiff's claim of sex discrimination must be dismissed because plaintiff failed to raise it in his EEOC complaints. As stated above, the only reference in the EEOC charges to plaintiff's sex was the single statement in the first complaint about "white men" having been held to different standards while plaintiff was in the Purchasing Department.

■ "A district court only has jurisdiction to hear Title VII claims that either are included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is 'reasonably related' to that alleged in the EEOC charge." *Butts v. City of New York Dep't of Housing Preservation and Development,* 990 F.2d 1397, 1401 (2d Cir.1993); *Stewart v. INS,* 762 F.2d 193, 198 (2d Cir. 1985). A claim of discrimination is reasonably related to a charge filed with the EEOC if: (a) the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination; or (b) the claim alleges retaliation by the employer against an employee for filing an EEOC charge; or (c) the plaintiff alleges further

incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge. *Butts,* 990 F.2d at 1402–03.

Of these three circumstances, the only one that could potentially apply here is the first, which is essentially an allowance for "loose pleadings." *Id.* at 1402. To do so in this case, however, would simply stretch this concept too far. A single reference to white males having been treated differently in the Purchasing Department could not reasonably be expected to lead the EEOC to investigate whether plaintiff's termination from the Internal Audit Department, which was the subject of his first EEOC complaint, was the result of sex discrimination. "[C]ourts will not permit a claim that is based on a wholly different type of discrimination to be brought if it was not initially asserted in the EEOC charge." *Peterson v. Insurance Co. of North America,* 884 F.Supp. 107, 109 (S.D.N.Y. 1995). Plaintiff's own statement in his second, retaliation, charge that he had "filed a charge of age and race discrimination ..." suggests that he himself did not believe that his first charge alleged sex discrimination.

To allow plaintiff's sex discrimination claim to go forward under these circumstances "would clearly frustrate the essential purpose of the statutory exhaustion requirement—giving the EEOC the opportunity to investigate, mediate, and take remedial action to encourage the settlement of discrimination disputes through conciliation and voluntary compliance." *Spurlock v. NYNEX,* 949 F.Supp. 1022, 1030 (W.D.N.Y.1996) (dismissing disability discrimination claim where EEOC charge only mentioned race discrimination). Accordingly, this claim must be dismissed. *See Harris v. American Protective Services of New York, Inc.,* 1 F.Supp .2d 191, 195 (W.D.N.Y.1998) (dismissing race and disability discrimination claims on ground that they were not reasonably related to claim of sex discrimination contained in plaintiff's EEOC charge); *McKinney v. Eastman Kodak Co.,* 975 F.Supp. 462, 466 (W.D.N.Y. 1997) (motion to amend complaint to add claims of sex discrimination and Family and Medical Leave Act violations denied as futile where EEOC charge alleged only age discrimination and retaliation for complaining

about age discrimination); *Mathura v. Council for Human Services Home Care Services, Inc.*, 1996 WL 157496 (S.D.N.Y. Apr.2, 1996) (sex discrimination claim not reasonably related to race discrimination claim), *aff'd*, 107 F.3d 3 (2d Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 93, 139 L.Ed.2d 49 (1997); *Nelson v. Cigna*, 1995 WL 848514 (D.Conn. Dec.7, 1995) (race and sex discrimination claims not reasonably related to age and disability discrimination claims); *Dennis v. Pan American World Airways, Inc.*, 746 F.Supp. 288, 291 (E.D.N.Y.1990) (age discrimination claim under ADEA dismissed where plaintiff's EEOC charge asserted only racial discrimination); *Kawatra v. Medgar Evers College of the City Univ. of N.Y.*, 700 F.Supp. 648, 654 (E.D.N.Y.1988) (marital status discrimination claim not reasonably related to plaintiff's charges of sex and national origin discrimination with the EEOC); *McPartland v. American Broadcasting Companies, Inc.*, 623 F.Supp. 1334, 1339 (S.D.N.Y.1985) (plaintiff's age discrimination claim dismissed where her EEOC charge only mentioned sex discrimination, harassment, retaliation and discriminatory discharge).

## B. Merits of the Claim

■ My finding that I lack jurisdiction over plaintiff's sex discrimination claim because of his failure to include it in his EEOC charge renders it unnecessary for me to address it on the merits. I do so, however, only to note that even if I were to consider it on the merits, I would grant defendant's motion for summary judgment on this claim.

Plaintiff's sex discrimination claim suffers from many of the same defects as his age discrimination claim, and I will not repeat my analysis of those defects at length here. I do note that just as his age claim is flawed because his alleged replacements were older than he, plaintiff's sex discrimination claim likewise fails because both of plaintiff's alleged replacements were men.

Plaintiff's claim of earlier preferences being given to females in the Purchasing Department also cannot defeat defendant's motion for summary judgment. Except for his testimony at his deposition about Beth De-Franco (who was awarded a position that plaintiff had not applied for), plaintiff has not identified the women or promotions in question, and he stated at his deposition that there were no other positions in Purchasing that he could have been promoted to, other than the one that DeFranco got. Plaintiff's Depo. at 67. As with his age claim, plaintiff has also has shown no nexus between those alleged events and his termination from the Internal Audit Department.

## III. Race Discrimination Claim

■ On the merits, plaintiff's claim of race discrimination stands largely on the same footing as his age claim, with the exception that plaintiff's alleged replacements, Tolbert and Diaz, were nonwhites. Plaintiff's claim suffers from one problem, however. Plaintiff does not dispute defendant's assertion that, following plaintiff's termination, but prior to the hiring of Tolbert and Diaz, two other employees in plaintiff's former unit within the Internal Audit Department, Frederick Reissig and Keith LaSota, resigned. According to defendant, Tolbert and Diaz were hired to replace Reissig and LaSota.

Plaintiff disputes this, claiming that in fact Tolbert and Diaz did replace him. Plaintiff contends that there at least issues of fact in this regard.

Viewing the record in the light most favorable to plaintiff, I find that his race discrimination claim cannot withstand defendant's motion for summary judgment. For one thing, plaintiff has not submitted evidence to rebut defendant's assertion that RTC did undergo a reorganization in 1993, partly with an eye toward paring its workforce. RTC's Form 10–K that it filed with the Securities Exchange Commission for fiscal year 1993 stated that "[o]verall, the Company reduced its work force by 7 percent during 1993 . . . ." Affidavit of Louis Massaro, sworn to June 19, 1998, Ex. A at 2. Thus, there is no reason to doubt the truth of Karbel's statement that his decision to terminate one of the six internal auditors was due to directives from RTC corporate management that a reduction in the number of personnel was required, and not simply to a desire on his part to hire minority employees.

Plaintiff, however, contends that his termination was due to the effects of a "cascading objectives" policy at RTC pursuant to which objectives were announced at the highest levels of management and then further expressed and carried out at progressively lower levels. R.L. Bittner, RTC's President and Chief Executive Officer, issued a set of "1993 CEO Objectives," one of which was to "[i]ntroduce programs that improve the 'Diversity' of the organization such that the trend over a 5 year horizon will result in the composition of our workforce matching the composition of the markets we serve." Plaintiff's Exhibits in Opposition to Defendant's Motion ("Plaintiff's Exhibits") Ex. B at 3. L.L. Massaro, RTC's Corporate Vice President—Finance and Treasurer, likewise issued a set of objectives, including one that stated: "Improve the 'Diversity' of Corporate such that by year end there are a minimum of four minority employees within the group and at least one is at a second level or higher position. Clearly demonstrate through personal behavior that the Corporation values diversity as a business imperative." *Id.* at 2. Karbel also issued a list of objectives for the Internal Audit Department, including an objective to "[i]mprove the 'Diversity' of the Internal Audit Group such that by year end there is at least one minority employee within the group. Clearly demonstrate through personal behavior that the Corporation values diversity as a business imperative." *Id.* at 1.

According to plaintiff, then, the alleged downsizing at RTC was nothing more than a pretext to get rid of older white males and replace them with minority employees. He claims that this is what occurred in the Internal Audit Department: that he was terminated, ostensibly as part of RTC's overall downsizing, but in reality to make way for one or more minority employees.

Plaintiff's attorney also states in an affidavit that, in support of his claim that there was no real downsizing going on at RTC, "Mr. Blanke will testify at trial, and upon information and belief, his testimony will be corroborated by others with first-hand information, ... which will establish that the number of managers has increased from approximately 670 managers to more than 850 managers since 1993, the year in which Mr. Blanke was terminated." Reply Affidavit of Theodore S. Kantor, sworn to June 22, 1998 ¶ 3.

■ This allegation is wholly insufficient to defeat defendant's motion. For one thing, "[a]n affidavit of the opposing party's attorney which does not contain specific facts or is not based on first-hand knowledge is not entitled to any weight." *Wyler v. United States,* 725 F.2d 156, 160 (2d Cir.1983). Moreover, to defeat a well-founded summary judgment motion, the non-moving party must come forward with "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson v. Liberty Lobby,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An attorney's affidavit alleging what his client *will* say at trial, without any actual evidence to support that assertion, is simply inadequate. Such an assertion is equivalent to an attorney's opening statement at trial, in which he tells the jury what he expects his client to say in his testimony. Certainly no reasonable juror could return a verdict in the client's favor based on that alone. In short, if plaintiff has evidence that the number of managers increased as he claims, he should have presented it in opposition to defendant's motion for summary judgment, or at the very least identified the nature of the alleged evidence. Conclusory allegations that such evidence will be forthcoming at trial are not good enough.

■ In addition, the relevance of an increase in the number of managers at RTC since 1983 to plaintiff's termination is minimal at best. Plaintiff was not a manager but an internal auditor, and he has presented no evidence to show that the number of internal auditors in his department increased after his termination. Plaintiff testified at his deposition that he "kn[e]w there was three minorities according to Larry [Root, another internal auditor] that were hired shortly after I left." Plaintiff's Depo. at 160. This is hearsay, however, and plaintiff has put forward nothing to indicate that Root himself would so testify at trial. A party "cannot rely on inadmissible hearsay in opposing a

motion for summary judgment, absent a showing that admissible evidence will be available at trial." *Burlington Coat Factory Warehouse v. Esprit De Corp.*, 769 F.2d 919, 924 (2d Cir.1985) (citations omitted). Plaintiff's attorney did depose Root, *see* Reply Affidavit of Todd R. Shinaman, sworn to March 27, 1998, Ex. B, but plaintiff has submitted no excerpts from that testimony concerning how many minority employees were hired after plaintiff's termination. Moreover, plaintiff has presented no independent evidence to corroborate this assertion.

All the admissible evidence before the court, then, indicates that when plaintiff was terminated, the number of internal auditors dropped from six to five, and that it never rose above five after that date. When Reissig and LaSota resigned, the number dipped still further, and the hiring of Tolbert and Diaz simply restored it to five.

It simply makes no sense to think that Tolbert and Diaz replaced plaintiff when two other auditors voluntarily resigned after his termination. All of the auditors held the same position and had essentially the same duties. If Karbel had determined that he wanted five auditors in the department, there is no logical way that he could have hired Tolbert or Diaz to replace plaintiff, who had been the sixth auditor prior to his termination. When Reissig and LaSota resigned, vacancies arose in the Internal Audit Department; when plaintiff was terminated, there was no vacancy as a result, because the desired number of auditors had been set at five. *See Frieze v. Boatmen's Bank of Belton,* 950 F.2d 538, 541 (8th Cir.1991) (where evidence showed that plaintiff's alleged replacement was hired only after another employee resigned, some five months after plaintiff's discharge, jury could not reasonably infer that other person was hired to replace plaintiff); *Lilley v. BTM Corp.,* 958 F.2d 746, 752 (6th Cir.1992) (fact that an employee was hired nine months after plaintiff was terminated was not probative of age discrimination); *Kirkpatrick v. Yellow Freight Sys., Inc.,* No. 1:96–CV–53RR, 1997 WL 149326 *6–7 (S.D.Miss. Jan.17, 1997) (rejecting plaintiff's assertion that hiring of an-

other person to fill a vacancy that arose months after plaintiff's termination, and for which plaintiff did not apply, constituted discrimination).

In addition, even if Tolbert and Diaz could be considered plaintiff's replacements, that alone would not suffice to defeat defendant's motion for summary judgment. Replacement by a person of a different race may suffice to make out the fourth element of a *prima facie* case under Title VII, but without additional evidence of discriminatory intent, it is insufficient at the summary judgment stage. "That one's replacement is of another race, sex, or age may help to raise an inference of discrimination, but it is neither a sufficient nor a necessary condition." *Carson v. Bethlehem Steel Corp.,* 82 F.3d 157, 159 (7th Cir.1996). *See Hill v. Burrell Communications Group Inc.,* No. 92 C 8343, 1995 WL 76881 *5 (N.D.Ill. Feb.17, 1995) (by itself, assertion that plaintiff was replaced by black person only satisfies part of plaintiff's burden to make a *prima facie* case, and does not permit an inference of discriminatory animus); *see also McGraw v. Wyeth–Ayerst Labs., Inc .,* No. CIV. A. 96–5780, 1997 WL 799437 *7 (E.D.Pa. Dec.30, 1997) (replacement of female employee with male employee after she was terminated is not enough to demonstrate disparate treatment or raise inference of unlawful discrimination under Title VII); *Brown v. Herman's Furniture, Inc.,* 772 F.Supp. 350, 356 (N.D.Ohio 1990) (fact that black female plaintiff was replaced by white male "add[s] nothing beyond establishing plaintiff's prima facie case").

Plaintiff, of course, does contend that he has shown more than his alleged replacement by minority employees; he relies as well on the "cascading objectives" seeking to increase "diversity" within RTC by hiring more minority employees. I find that too slender a reed on which to rest plaintiff's race discrimination claim, however. To infer from those generalized statements that Karbel deliberately terminated plaintiff to make room for a minority employee would not be reasonable. The statements articulating RTC's broad goal of increasing the number of minority employees within its ranks contain no suggestion that white employees

would be terminated in order to effectuate that goal. Even the statements concerning specific targets for the number of minority employees by year's end do not in themselves suggest that whites would be let go in the process. In any business, vacancies will arise from time to time as employees retire, resign, or get promoted or transferred. Indeed, that is exactly what happened here when Reissig and LaSota resigned. RTC's stated objectives, then, indicate no more than that managers should be on the lookout for, or actively recruit, minority candidates when positions did become open. Even if this evidence could suffice to establish the fourth element of plaintiff's *prima facie* case, then, it is not enough to defeat defendant's motion for summary judgment. *See Silver v. City Univ. of New York,* 947 F.2d 1021, 1022 (2d Cir.1991) (internal memorandum stating that lists of candidates for Distinguished Professor "should include a very significant representation of minorities and females" in no way suggested that appointments to that position would be race–or gender–based) (per curiam); *Brown v. Time, Inc.,* No. 95 Civ. 10081, 1997 WL 231143 *4 (S.D.N.Y. May 7, 1997) (newsletter circulated by defendant's chairman stating, "[W]e must make diversity a reality ... We must do as well at recruiting, retaining, and promoting minorities as we have with women in publishing" "express[ed] a commitment to diversity, but d[id] not thereby suggest a policy of discrimination"); *Payne v. Norwest Corp.,* 911 F.Supp. 1299, 1305–06 (D.Mont.1995) (internal memo that recommended increasing the number of women and minorities in certain positions, and fact that company had diversity goals and kept statistics on the number of minorities employed at managerial levels, did not give rise to inference that plaintiff was fired because he was white), *aff'd in part and rev'd on other grounds in part,* 113 F.3d 1079 (9th Cir.1997).

## IV. Retaliation Claim

Plaintiff alleges that in retaliation for plaintiff's filing of charges against defendant with the EEOC, defendant has refused to consider him for re-employment and has deliberately made it difficult for plaintiff to find work elsewhere by "blackballing" him or suggesting to potential employers seeking references that plaintiff is a troublemaker. Plaintiff also alleges that during his exit interview, Karbel told him that "as long as there was no trouble, [plaintiff] didn't make waves, whatever, that [plaintiff] would be considered for future openings within the corporation." Plaintiff's Depo. at 142. According to plaintiff, he did apply for various jobs at RTC and submitted his resumé several times, usually when he noticed newspaper advertisements for openings at RTC, but RTC never contacted him or acknowledged that it had received his applications.

Plaintiff has also submitted a copy of a memorandum by Louis V. Falvo of the Falvo Agency, a private investigating firm that plaintiff hired after his termination to find out if RTC was saying anything to potential employers of plaintiff that could have hurt plaintiff's chances for securing employment. The text of the memorandum is as follows:

1) Investigators confirmed negative statements made by Rochester Telephone Company (RTC) to potential employers:

A) "Did you know that Mr. Blanke has filed charges with the EEOC against RTC?"

B) "Our reference information must not get back to Mr. Blanke or others."

C) "You need to contact our Legal Department next."

D) An unknown potential employer is then required, by RTC's Legal Department, to send them a letter on their company letterhead, requesting reference information. In it, they are to document the company they are working for, and confirm that no information will be supplied to Mr. Blanke or anyone else. After these conditions are met, RTC's Legal Department will set up a meeting with Mr. Blanke's previous supervisors.

In my opinion, I cannot help but conclude that any one of the above RTC statements's [sic] would "throw up red flags" to potential employers.

Supplemental Affidavit of Theodore S. Kantor, sworn to June 16, 1998, Ex. F.

Both Title VII and the ADEA prohibit employers from discriminating against an employee because the employee has opposed any practice made unlawful by those statutes, or has filed a charge under either statute. 42 U.S.C. § 2000e–3; 29 U.S.C. § 623(d). The analysis of such claims is the same under either statute. *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 465 (2d Cir.1997). To establish a *prima facie* case, plaintiff must show that he engaged in activity protected by Title VII or the ADEA, that defendant was aware of the activity, that plaintiff was subjected to an adverse employment action, and that there is a causal connection between the protected activity and the adverse action. *Tomka v. Seiler*, 66 F.3d 1295, 1308 (2d Cir.1995). "Proof of a causal connection can be established indirectly by showing that the protected activity was followed closely by discriminatory treatment, ... or through other evidence such as disparate treatment of fellow employees who engaged in similar conduct, ... or directly through evidence of retaliatory animus directed against a plaintiff by the defendant." *DeCintio v. Westchester County Med. Ctr.*, 821 F.2d 111, 115 (2d Cir.), *cert. denied*, 484 U.S. 965, 108 S.Ct. 455, 98 L.Ed.2d 395 (1987) (citations omitted). If plaintiff makes out a *prima facie* case, the claim is analyzed according to the *McDonnell Douglas/Burdine* burden-shifting analysis. *Sumner v. United States Postal Service*, 899 F.2d 203, 208 (2d Cir.1990).

There is no dispute here that plaintiff did engage in protected activity when he filed his first EEOC charge. As explained more fully below, he has also submitted sufficient evidence both that RTC was aware of his EEOC complaint, and that he was subjected to an adverse employment action. The main issue is whether he has presented enough evidence to give rise to an issue of fact concerning whether his protected activity and the adverse action are causally related.

With respect to RTC's failure to re-hire plaintiff, it does appear that plaintiff made some efforts to obtain another position at RTC after his termination. Although plaintiff's papers and his deposition testimony do not always identify with precision every specific position he applied for, he did testify at his deposition that he applied for a purchasing manager position, and that he "applied for on a regular basis" jobs in three categories: purchasing, audit, and marketing. Plaintiff's Depo. at 172, 197. For purposes of this motion, then, I believe that there is sufficient evidence that plaintiff did apply for re-employment, and it does not appear that RTC ever responded to his inquiries. At any rate, it is clear that RTC did not rehire plaintiff, which for purposes of a retaliation claim can constitute an adverse job action. *See Veprinsky v. Fluor Daniel, Inc.*, 87 F.3d 881, 892–93 (7th Cir.1996); *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1141 (5th Cir.1981), *cert. denied*, 455 U.S. 1000, 102 S.Ct. 1630, 71 L.Ed.2d 866 (1982); *Weissman v. Dawn Joy Fashions, Inc.*, No. 95 Civ. 1841, 1997 WL 458797, *3 (S.D.N.Y. Aug. 11, 1997).

The issue, then, is whether plaintiff has submitted sufficient evidence to give rise to a genuine issue of fact about whether there is a causal action between the protected activity here, *i.e.*, plaintiff's EEOC charge, and defendant's failure to rehire plaintiff. I find that he has. Viewed in the light most favorable to plaintiff, the nonmoving party, the evidence could persuade a finder of fact that RTC refused to consider rehiring plaintiff, and that RTC deliberately suggested to potential employers of plaintiff that he was not a desirable employee because he had a proclivity for filing charges against his employers.

First, the alleged statement by Karbel that RTC would consider rehiring plaintiff as long as he "didn't make waves" could certainly be interpreted to mean that plaintiff would *not* be considered if he did "make waves." Although Karbel's alleged statement did not explain what he meant by "making waves," filing an EEOC charge against RTC could easily fall within that category.

I also note that Karbel's alleged statement appears to be admissible as an admission of a party-opponent under Rule 801(d)(2)(D) of the Federal Rules of Evidence. Karbel was the Internal Audit Director at RTC at the time that he allegedly made the statement, and the statement related to a matter within

the scope of his employment. Whether a factfinder could reasonably impute that statement to RTC as a whole, or consider it in relation to plaintiff's applications for positions within other departments at RTC, is another matter, but since plaintiff alleges that he also applied for reemployment within the Audit Department, the statement is at least probative of whether those applications were rejected because of plaintiff's EEOC filing.

RTC's apparent failure to acknowledge their receipt of plaintiff's applications, though perhaps not in itself a sufficient basis from which to infer any retaliatory motive, nonetheless could be seen as some evidence that RTC simply refused even to consider rehiring plaintiff. In that regard, I note that defendant has submitted an affidavit of Alfred Wesley Bailey, who was RTC's Director of Procurement in October 1994, when he hired one Phillip Kelley for the purchasing manager position that plaintiff alleges he applied for. Bailey states that he "do[es] not specifically recall whether Richard Blanke had applied for this position...." Affidavit of Alfred Wesley Bailey, sworn to June 26, 1998, ¶ 2. While this might be no more than a simple memory lapse, it also raises the possibility that plaintiff's application was never forwarded to Bailey or that Bailey simply rejected plaintiff out of hand. Certainly a jury could find otherwise, but on this motion I must view the evidence in the light most favorable to the plaintiff, and combined with Karbel's alleged statements I find that the evidence is sufficient to defeat defendant's motion for summary judgment on this claim.

Also noteworthy is the memorandum by Louis Falvo concerning statements allegedly made by RTC to potential employers of plaintiff. Although the unsworn memorandum itself would not be admissible at trial, plaintiff can rely on it for purposes of this motion provided that admissible evidence would be available at trial. *Burlington Coat Factory Warehouse,* 769 F.2d at 924. Since Falvo was hired by plaintiff, presumably he would be willing to testify on plaintiff's behalf. If not, he, or his employees, could be subpoenaed to testify.

Assuming that plaintiff could introduce admissible evidence consistent with the contents of Falvo's memorandum, a jury could find that RTC's statements to potential employers were in retaliation for plaintiff's EEOC charges. "There is little question that the dissemination of adverse employment references can constitute a violation of Title VII if motivated by discriminatory intent." *Hashimoto v. Dalton,* 118 F.3d 671, 674 (9th Cir.1997) (quoting *London v. Coopers & Lybrand,* 644 F.2d 811, 817 (9th Cir .1981)).

Moreover, disclosure of the fact that plaintiff had filed an EEOC complaint against RTC could be considered an adverse action for purposes of his retaliation claim. Certainly a potential employer might think twice about hiring someone after finding out that he had filed charges against his previous employer. *See Veprinsky v. Fluor Daniel, Inc.,* 87 F.3d 881, 894 (7th Cir.1996) (reversing summary judgment for former employer on plaintiff's claim that defendant retaliated against him by informing placement firm that plaintiff had filed EEOC charge against defendant); *Rutherford v. American Bank of Commerce,* 565 F.2d 1162, 1164 (10th Cir.1977) (act of plaintiff's former employer in informing potential employer that plaintiff had filed sex discrimination charge against defendant was an act of retaliation in violation of Title VII); *Czarnowski v. Desoto, Inc.,* 518 F.Supp. 1252, 1259 (N.D.Ill.1981) (former employer's informing potential employer that plaintiff had filed EEOC complaint against former employer painted plaintiff as "a disgruntled employee or 'troublemaker,'" and constituted retaliation in violation of Title VII); *see also Pantchenko v. C.B. Dolge Co.,* 581 F.2d 1052, 1055 (2d Cir.1978) (former employer's refusal to give plaintiff referral letters, if intended as retaliation against plaintiff for having filed EEOC charge, violates Title VII).

Plaintiff, then, has adduced sufficient evidence to give rise to a genuine issue of material fact concerning whether RTC took action against plaintiff in retaliation for his having filed an EEOC complaint. Defen-

dant's motion for summary judgment on this claim must therefore be denied.[2]

### V. Defamation Claim

Defendant has also moved for summary judgment on plaintiff's defamation claim under New York law, which is asserted here pursuant to the court's supplemental jurisdiction under 28 U.S.C. § 1367. Defendant contends that this claim is time-barred and that, as pleaded, it fails to comply with N.Y.C.P.L.R. § 3016(a)'s requirement that in a defamation claim, "the particular words complained of shall be set forth in the complaint."

From my reading of the complaint, I am not certain that plaintiff even intended to assert a defamation claim. Paragraph 28 of the complaint alleges that because of plaintiff's filing of his EEOC complaint, "the defendant has retaliated against him by refusing to consider him for reemployment, has defamed his name and his character, and has caused plaintiff grave and serious difficulty in obtaining suitable alternative employment with other employers...." Thus, it appears that plaintiff was not so much setting forth a cause of action for defamation as merely describing one way in which defendant has allegedly retaliated against him.

In addition, the context of this allegation suggests that the alleged defamation consisted of disparaging statements about plaintiff that RTC made to potential employers. At some point during the course of this litigation, however, plaintiff based this claim instead on statements that Karbel allegedly made at a staff meeting at some point after plaintiff's termination. According to two persons who were present at the meeting, certain computer software was discovered to be missing at around the time that plaintiff left RTC. Karbel allegedly stated at the meeting that he believed that plaintiff had stolen it, and when he began to continue to talk about it, his supervisor told him to drop the subject and move on to other business, which Karbel apparently did. Lawrence Root Deposition (Shinaman Reply Aff. Ex. B) at 22; Shirley McCormick Deposition (Shinaman Reply Aff. Ex. C) at 14.

It appears, then, that plaintiff may not even have intended to assert a defamation claim, and that even if he did, the factual basis for the claim has completely changed over the course of this litigation. Since the parties have been proceeding with the mutual understanding that plaintiff is asserting such a claim, however, I will address the merits of defendant's motion with respect to this claim.

The statute of limitations in New York on a claim for slander is one year. C.P.L.R. § 215(3). The two persons who testified regarding Karbel's alleged statements, Lawrence Root and Shirley McCormick, both left RTC in 1994. Root Depo. at 5; McCormick Depo. at 7. Thus, Karbel made the statements no later than 1994. The complaint in this case was filed in March 1996, and plaintiff has advanced no basis for tolling here or any other way to avoid the limitations period. Accordingly, plaintiff's defamation claim is dismissed.[3]

### CONCLUSION

Defendant's motion for summary judgment (Item 12) is granted in part and denied in part. Defendant's motion is granted as to plaintiff's claims for discrimination on account of his race, sex and age, and on his defamation claim, and those claims are dismissed. Defendant's motion is denied with respect to plaintiff's claim that defendant retaliated against him in violation of 42 U.S.C. § 2000e–3; 29 U.S.C. § 623(d) is denied.

IT IS SO ORDERED.

---

**2.** Since the alleged retaliation occurred after plaintiff's termination in April 1993, it is unnecessary for me to address defendant's argument that any claims relating to events occurring more than 300 days before plaintiff filed his EEOC complaint, *i.e.*, prior to March 25, 1993, are time-barred by the 300–day time limit contained in 42 U.S.C. § 2000e–5(e) and 29 U.S.C. § 626(d)(2).

**3.** My finding that this claim is time-barred renders it unnecessary for me to address defendant's contention that the claim does not comply with C.P.L.R. § 3016.